IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

THOMAS OTTER ADAMS, # 100 612      *

     Plaintiff,      *

       v.      *      2:06-CV-873-ID
                                    (WO)

WARDEN GWENDOLYN MOSLEY, *et al.*,      *

     Defendants.      *

_____


## RECOMMENDATION OF THE MAGISTRATE JUDGE

In this 42 U.S.C. § 1983 action, Thomas Adams, an inmate currently incarcerated at

the Staton Correctional Facility in Elmore, Alabama, alleges that he was subjected to

excessive force in August 2006 during his incarceration at the Easterling Correctional

Facility located in Clio, Alabama.  Named as defendants are Warden Gwendolyn Mosley,

Sergeant Lewis Hulett, and Correctional Officers  Joel Tew, Darron Fayson, and Angela

Brown.  Plaintiff requests damages, declaratory relief, and trial by jury.[1]

In accordance with the  orders of the court, Defendants filed an answer,  special

report, supplemental special reports, and supporting evidentiary material in response to the

allegations contained in the complaint. The court then informed Plaintiff that Defendants'

special report, as supplemented,  may, at any time, be treated as a motion for summary

---

[1]In his complaint, Plaintiff requested a "temporary injunction, restraining order." (*Doc. No. 1 at 4*.)
Construed as a motion for temporary restraining order, the court denied the request by order entered
September 28, 2006. (*See Doc. No. 3*.)

judgment, and the court explained to Plaintiff the proper manner in which to respond to a motion for summary judgment. Plaintiff filed responses to the special report filed by Defendants, as supplemented. This case is now pending on Defendants' motion for summary judgment. Upon consideration of the motion, Plaintiff's opposition to the motion, and the supporting and opposing evidentiary materials, the court concludes that Defendants' motion for summary judgment is due to be granted in part and denied in part.

## I.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (citation omitted); Fed.R.Civ.P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[2]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v.*

---

[2]Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules.  These changes ... are stylistic only."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

*Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

To survive Defendants' properly supported motion for summary judgment, Plaintiff is required to produce "sufficient [favorable] evidence" establishing proper exhaustion of administrative remedies. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations...."); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is

3

not sufficient to oppose summary judgment...").  Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier

4

of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec.*
*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence
before the court which is admissible on its face or which can be reduced to admissible form
indicates that there is no genuine issue of material fact and that the party moving for
summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*,
477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials
and affidavits before the court show there is no genuine issue as to a requisite material fact);
*Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party
must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the
nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a
*pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine
issue of material fact. *Beard v. Banks*, 548 U.S. 521, ___, 126 S.Ct. 2572, 2576, 165 L.Ed.2d
697 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, Plaintiff's *pro se*
status alone does not mandate this court's disregard of elementary principles of production
and proof in a civil case.

## II.  DISCUSSION

*A. Declaratory/Injunctive Relief*

Plaintiff is no longer incarcerated at the Easterling Correctional Facility.  The transfer
or release of a prisoner renders moot any claims for injunctive or declaratory relief.  *See*
*County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755

F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury). As it is clear from the pleadings and records before the court that Plaintiff is no longer incarcerated at Easterling Correctional Facility, his request for declaratory and/or injunctive relief have been rendered moot.

*B. Official Capacity Claims*

To the extent Plaintiff seeks to sue Defendants in their official as well as their individual capacities, they are immune from monetary damages. "[A] state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that Defendants are state officials entitled to Eleventh Amendment immunity when sued in their official capacities. Defendants are, therefore, entitled to absolute immunity from Plaintiff's claims for monetary damages

6

asserted against them in their official capacities.

*C.  Individual Capacity Claim*

   *i.  The Excessive Force Claim*

Defendants argue that they are entitled to qualified immunity on Plaintiff's excessive force claim.  The law of this Circuit, however,  precludes a defense of qualified immunity in cases alleging excessive force in violation of the Eighth Amendment because the use of force "maliciously and sadistically to cause harm" is clearly established to be a constitutional violation.  *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002), citing *Hudson v. McMillian*, 503 U.S. 1 (1992), and *Whitley v. Albers*, 475 U.S. 312 (1986). A qualified immunity defense is, therefore, not available when a plaintiff properly pleads the use of excessive force.  *Id.*  Plaintiff has properly pled a claim of excessive force.  Thus, the only question in this case is whether he has alleged facts sufficient to survive a motion for summary judgment.  *Id.*  Accordingly, this court will consider whether Plaintiff's allegation that Defendants used excessive force against him, which the court must take as true for purposes of summary judgment, sets forth a violation of his Eighth Amendment rights.

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm."  *Whitley v. Albers,* 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)); *see also Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).  To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used,

Case 2:06-cv-00873-ID-CSC   Document 37   Filed 11/03/08   Page 8 of 18


> the threat reasonably perceived by the responsible officials, and
> any efforts made to temper the severity of a forceful response."
> *Hudson,* at 7-8, 112 S.Ct. 995; *see also Whitley,* 475 U.S. at 321,
> 106 S.Ct. 1078; *Harris v. Chapman,* 97 F.3d 499, 505 (11th
> Cir.1996).  From consideration of such factors, "inferences may
> be drawn as to whether the use of force could plausibly have
> been thought necessary, or instead evinced such wantonness
> with respect to the unjustified infliction of harm as is tantamount
> to a knowing willingness that it occur."  *Whitley,* 475 U.S. at
> 321, 106 S.Ct. 1078 (quoting *Johnson,* 481 F.2d at 1033).

*Skrtich*, 280 F.3d at 1300-1301.

In *Hudson*, the Court held that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment even though the prisoner does not suffer serious injuries.  *Id.* 503 U.S. at 9; *but see Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights").  An excessive force claim "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10 (quoting *Whitley*, 475 U.S. at 327).

Plaintiff's complaint alleges that on the morning of August 10, 2006 he began experiencing chest pains.  He alerted Officer Fayson, who was conducting security checks on B-Side of the segregation unit that morning, of his condition.  Officer Fayson reported Plaintiff's health concern to Sgt. Hulett who instructed Officers Fasyon and Brown to escort Plaintiff to the lobby.  After being handcuffed behind his back and removed from his cell, Plaintiff asserts that Officers Fayson and Brown escorted him to the segregation lobby where

he was to wait for an escort to the health care unit. Officer Tew then arrived in the segregation lobby with a wheelchair.  For reasons unexplained in the complaint, Officer Tew began berating Plaintiff and told him to get to the health care unit the best way he could. Plaintiff states that Officer Tew's conduct made him "scared, frightened, and defensive" so he got up from his chair intending to walk to the health care unit by himself. At that point, Plaintiff claims that Officer Tew grabbed him, picked him up, and body slammed him to the floor knocking the breath out of him.  After Defendants picked up him and put him in the wheelchair Plaintiff states he was escorted to the healthcare unit by Officers Tew and Hulett. (*Doc. No. 1 at 2-3; see also Doc. No 16, Fayson Affidavit*.)

Healthcare personnel examined Plaintiff and found nothing wrong with him.  He was discharged to DOC custody and ambulated back to his cell. Later in the day Plaintiff requested a body chart due to pain in his wrists.  According to Plaintiff his right wrist was very swollen, abraded, and bleeding. Plaintiff contends that Officer Hulett refused his request for a body chart.  After the second shift arrived, Plaintiff maintains that he was taken to the health care unit where he received an examination.  Medical personnel directed that Plaintiff receive an  x-ray on August 11, 2006. After  x-rays of  his lower back, right side ribs, and right wrist were taken, Plaintiff received a wrist splint which he wore for two weeks. He also received prescriptions for Flexoril and Tylenol.  At the time he filed his complaint on September 28, 2006, Plaintiff complained that he still had back pain and numbness in his right wrist. (*Doc. No. 1 at 6-7.*)

In support of their dispositive motion, Defendants have submitted affidavits,  incident

reports, disciplinary reports, and copies of Plaintiff's medical records. This evidence reflects that, similar to the allegations presented in the complaint, at approximately 9:30 a.m. on August 10, 2006 Officer Fayson notified Sgt. Hulett that Plaintiff was complaining of chest pains. The sergeant directed Officers Fayson and Brown to escort Plaintiff to the segregation unit lobby. Sgt. Hulett requested a wheelchair from the healthcare unit. After a runner arrived with the wheel chair Sgt. Hulett instructed Officer Tew to assist Plaintiff into the wheelchair so that he would be taken to the infirmary. Officer Tew directed Plaintiff to sit in the wheelchair. At this point the parties' version of events diverges. According to Defendants, Plaintiff ignored Officer Tew's request and proceeded to kick the wheelchair stating ""Ya'll ain't going to do anything for me. Ya'll want me dead. Ya'll are making a bid deal out of some pastel pencils and some pills."[3] Officer Tew again ordered Plaintiff to have a seat in the wheelchair. Plaintiff once again ignored the order, jumped up from the chair he was sitting in, and began walking towards an exit door. Officer Tew grabbed Plaintiff by his jumpsuit, told him to stop, and ordered him a third time to sit in the wheelchair. As Plaintiff pulled away from Officer Tew's grasp, the guard grabbed Plaintiff's right upper arm and directed him to the wheelchair. Plaintiff kicked the wheelchair and proceeded to charge at Officer Tew pushing him into a wall. Officer Tew then grasped Plaintiff's upper body and

---

[3]Approximately 30 minutes prior to the incident made the subject of the instant complaint, Plaintiff's cell had undergone a routine search. Officer Tew confiscated various contraband items including razor blade pieces, a double-bladed pencil sharpener, a state-issued belt buckle, a band-aid, ten rolls of string, a box of pastel crayons, pieces of a ruler, an artist brush, and six 600 mg. Lopid pills. Following a disciplinary hearing, the hearing officer determined that Plaintiff had in his possession the contraband items described and subjected him to 45 days disciplinary segregation and loss of all privileges. (*Doc. No. 35, Exh. J*.)

took him to the ground.  After a struggle, Officers Tew, Brown, and Hulett placed Plaintiff in the wheelchair. Sgt. Hulett and Officer Tew  escorted Plaintiff to the healthcare unit. (*Doc. No. 16, Exhs. A-E, Doc. No. 32, Exh. F, Doc. No. 35, Exh. I.*)

At the healthcare unit Plaintiff advised medical personnel that he felt pains shooting across his chest and that he had recently taken a nitroglycerin tablet. Upon examination, Plaintiff was found to be in no visible distress.  Notes on Plaintiff's body chart state that he was "moaning and asking for a drink of water." Medical staff  further noted Plaintiff as stating that he was alright and just needed a drink of water. Plaintiff received an EKG which was  reviewed by a physician. Medical personnel found that Plaintiff required no further treatment and  discharged him from the infirmary. (*Doc. No. 16, Body Chart, Doc. No. 32, Exh. F at 12.*)

At 4:15 p.m. on August 10, 2006 Plaintiff was returned to the infirmary by Sgt. Hulett and another guard for his complaints of wrist, back, and chest pain due to being thrown on the floor by a correctional officer. Medical personnel observed that Plaintiff's right forearm had an approximately  3 inch red mark and a tiny scratch on the middle of the wrist with no bleeding.[4] His right lower forearm above the wrist showed some swelling.  Plaintiff was prescribed Tylenol, given an ice pack for his right wrist, and scheduled for an x-ray appointment.  On August 11, 2006 Plaintiff under went an x-ray of his right forearm which showed no recent fracture or other significant bony abnormality.  Plaintiff's x-ray of his

---

[4]Plaintiff's medical records made the afternoon of August 10, 2006 are not entirely legible.  Those portions deemed legible are referenced.  (*Doc. No. 32, Exh. F at 13.*)

lumbar spine and right rib also failed to show any injury and/or fracture. Plaintiff was given a splint for his right wrist for a two week period. (*Doc. No. 32, Exhs. F, G.*)

While the evidence before the court reflects that Plaintiff's injuries, if any, from being involved in the altercation with a correctional officer  were no more than *de minimis*, the injuries he received are only one factor for consideration.  While the absence of serious injury is relevant to an Eighth Amendment inquiry, it does not end this inquiry.  *Hudson*, 503 U.S. at 7; *Skrtich*, 280 F.3d at 1304 n.8, citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986); *see also Smith v. Mensinger*, 293 F.3d 641, 649 (3rd Cir. 2002) (considering the *de minimis* nature of injuries is an issue of fact to be resolved by the fact finder based on the totality of the evidence); *Brooks v. Kyler*, 204 F.3d 102, 103 (3rd Cir. 2000) (holding that there is "no fixed minimum quantity of injury that a prisoner must prove that he suffered" in order to state an excessive force claim).  The court must also consider the need for the application of force, the amount of force exerted, the threat reasonably perceived by the official, and any efforts to temper the severity of the forceful response.  *Skrtich*, 280 F.3d at 1305 n.9.

Plaintiff maintains that Defendants' conduct during the incident in question was unjustified and an unnecessary and excessive use of force inasmuch as there was no need to restrain him for any reason.  Specifically, Plaintiff  argues that at the time of the incident he was handcuffed behind his back and suffering from chest pains and, therefore, did not present any type of threat to Defendants.  Contrary to Defendants' contention that Plaintiff pushed/kicked  the wheelchair and/or began walking to a front exit door, Plaintiff claims he

merely stood up to walk to the health care unit after being told by Officer Tew to get there the best way he could.  When he proceeded to walk to the infirmary, Plaintiff alleges he was picked up by Officer Tew, body slammed to the floor on his back which knocked the breath out of him and caused his handcuffs to lock (which he contends had not been properly locked when applied) which in turn caused injury to his wrist.  In further support of his contention that Officer Tew's conduct constituted an unprovoked and unjustified attack, Plaintiff maintains that Defendants are aware that he is the "jail-house lawyer" in a civil suit filed in this court by an inmate alleging a claim of  excessive force.[5]  Defendants  deny that the use of force under the circumstances was excessive and maintain that only that amount of force necessary to subdue Plaintiff's aggressive conduct towards Officer Tew was employed. (*Doc. No. 16, Exh. B-E, Doc. No. 32, Exh. F.*)

The court is mindful of the fact that prisoners' non-compliance with the rules and regulations of a jail and the orders and directives of their custodians is not easily tolerated in a prison environment where strict adherence to rules and order within the institution's walls are mandated for security, safety, and discipline. Nevertheless, Plaintiff maintains that he did not pose a security threat at the time of the incident in question and thus, Officer Tew's conduct in grabbing him and slamming him to the floor was  unjustified.  Defendant Tew's denial of Plaintiff's claims creates genuine issues of fact which preclude summary judgment.  When viewing the facts in the light most favorable to Plaintiff, the court

---

[5]According to Plaintiff,  the correctional officer involved in that suit was required to take a polygraph test which he refused thereby allegedly resulting in the officer's transfer and demotion.   (*Doc. Nos. 17, 36*.)

concludes that Defendant Tew is not entitled to qualified immunity as Plaintiff alleges facts sufficient to survive a motion for summary judgment. *See Skrtich*, 280 F.3d at 1301. Consequently, the motion for summary judgment with respect to the excessive force claim against Defendant Tew is due to be denied.

### ii. Defendants Mosley and Hulett

Plaintiff makes no specific allegations against Defendant Mosley. Assuming, *arugnedo*, that his claim against Defendant Mosley is the same claim he makes against Defendant Hulett, *i.e.,* a failure to properly supervise subordinates, Plaintiff is entitled to no relief. Plaintiff's contention that Defendants Mosley and Hulett are liable for the actions of a correctional officer due to their supervisory roles is unavailing. The law is well settled that a defendant cannot be held liable in an action brought pursuant to 42 U.S.C. § 1983 under the theory of *respondeat superior* or on the basis of vicarious liability. *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1308 (11th Cir. 2006), *cert. denied*, ____ U.S.____, 127 S.Ct. 2428 (2007) ("Supervisory officials cannot be held liable under § 1983 for the unconstitutional actions of their subordinates based on respondeat superior liability. *Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir.1999)."); *see also Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978); *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994); *Brown v.* Crawford, 906 F.2d 667, 671 (11th Cir. 1990); *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986). Liability, however, may be imposed if Plaintiff shows that Defendants either personally participated in the alleged constitutional violation or instigated or adopted a policy that violated Plaintiff's constitutional rights. *See Hill v. Dekalb Reg'l Youth Det.*

*Ctr.*, 40 F.3d 1176, 1192 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536

U.S. 730 (2002).

> [Supervisory] liability under section 1983 must be based on something more
> than a theory of respondeat superior.  Supervisory liability occurs either when
> the supervisor personally participates in the alleged constitutional violation or
> when there is a causal connection between actions of the supervising official
> and the alleged constitutional deprivation.  The causal connection can be
> established when a history of widespread abuse puts the responsible supervisor
> on notice of the need to correct the alleged deprivation, and he fails to do so.
> *Cross v. Alabama Dep't. Of Mental Health & Mental Retardation*, 49 F.3d
> 1490, 1508 (11th Cir. 1995) (quoting *Brown v. Crawford*, 906 F.2d 667, 671
> (11th Cir. 1990); *accord Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992)
> ([A] supervisor may be held liable under section 1983 if the supervisor had
> personal involvement in the constitutional deprivation or if a sufficient causal
> connection exists between the supervisor's conduct and the constitutional
> deprivation.).

 *Dolohite v. Maughon*, 74 F.3d 1027, 1052 (11th Cir. 1996).

Plaintiff does not assert that Defendants Mosley or Hulett knew about Officer Tew's

intent to assault him nor does he allege that these defendants had a policy of allowing guards

to assault inmates.  Plaintiff does not contend, nor does he present any evidence to suggest

that Defendants Mosley or Hulett knew or should have known that he was going to be

attacked by Officer Tew.  Plaintiff's general and conclusory assertion that Sgt. Hulett failed

to respond in a reasonable manner where he knew of other inmate's excessive force claims

is insufficient to tie Defendants Mosley and/or Hulett to Officer Tew's assault against

Plaintiff.  (*Doc. No. 18 at 10*.)   Thus, Plaintiff has come forward with no evidence

demonstrating the existence of the requisite causal connection with regard to his excessive

force claim against Defendants Mosley and Hulett. In light of the foregoing, the court

concludes that Defendants Mosley and Hulett's motion for summary judgment on Plaintiff's excessive force and *respondeat superior* claims  is due to be granted.

### ii.  Defendants Brown and Fayson

Essential to sustaining an action under § 1983 are the presence of two elements. Specifically, the plaintiff must demonstrate that: (1) he suffered a deprivation of "rights, privileges or immunities secured by the Constitution and laws" of the United States; and (2) the act or omission causing the deprivation was committed by a person acting under color of law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  To state a claim, a plaintiff must show a specific constitutional or federal guarantee safeguarding the interests that have been violated. *Paul v. Davis*, 424 U.S. 693, 696-97 (1976).  Where no underlying constitutional right exists, a § 1983 claim will not lie.  *Wideman v. Shallowford Community Hospital, Inc.*, 826 F.2d 1030, 1032 (11th Cir. 1987).  It is clear from the complaint that Plaintiff's allegations against Defendants Brown and Fayson fail to state a violation of any constitutional right to which he is entitled.[6]  Summary judgment is, therefore, due to be granted in favor of these defendants.

---

[6]Defendant Fayson and Brown's involvement with Plaintiff on the day in question was limited to their presence in the segregation unit lobby and their assistance in escorting him to the segregation unit lobby and/or into the wheelchair.  (*See Doc. No. 1, Doc. No. 16 at Exhs. A & D.*)

The court takes note of Plaintiff's assertion in his opposition (*see Doc. No. 18 at 8*) that he presented in his complaint a claim that Defendants engaged in a conspiracy to conceal facts and cover-up evidence. The court  carefully reviewed the complaint but was unable to find any such  allegation.  Even assuming, *arguendo*, that such claim had been raise, the court notes that "[c]onspiring to violate another person's constitutional rights violates section 1983.  *Dennis v. Sparks,* 449 U.S. 24, 27 101 S.Ct. 183, 186 (1980); *Strength v. Hubert,* 854 F.2d 421, 425 (11th Cir.1988), *overruled in part on other grounds by Whiting v. Traylor,* 85 F.3d 581, 584 n.4 (11th Cir.1996)."  *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th 2002).  "To prove a 42 U.S.C. § 1983 conspiracy, [however,] a plaintiff 'must show that the parties "reached an understanding" to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy.' *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir.1990), *cert. denied,* 500 U.S. 932, 111 S.Ct. 2053, 114 L.Ed.2d 459 (1991).... [T]he linchpin for conspiracy is agreement ..." *Bailey v. Board of County Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir. 1992).  In order for a plaintiff "to establish the

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Defendants Mosley, Hulett, Brown, and Fayson's motion for summary judgment (*Doc. No. 16*) be GRANTED and that these defendants be DISMISSED as parties to this action; and

2.  Defendant Tew's motion for summary judgment  (*Doc. No. 16*) be DENIED.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before **November 17, 2008**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the

---

'understanding' or 'willful participation' required to show a conspiracy, ... [he] must [produce] some evidence of agreement between the defendants.... For a conspiracy claim to survive a motion for summary judgment '[a] mere "scintilla" of evidence ... will not suffice; there must be enough of a showing that the jury could reasonably find for that party.' *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990)." *Rowe*, 279 F.3d at 1283-1284. Merely "stringing together" adverse acts of individuals is insufficient to demonstrate the existence of a conspiracy. *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992). Here, Plaintiff's assertion, at best, is a purely self-serving, conclusory allegation that fails to assert those material facts necessary to establish a conspiracy between Defendants. *Fullman v. Graddick*, 739 F.2d 553 (11th Cir. 1984).  Thus, there is a total lack of evidence, significantly probative or otherwise, to support Plaintiff's conspiracy theory.

District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 3rd day of November 2008.


 /s/   Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE